IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JERELLE HOLDEN,<br>                  Plaintiff,<br>    v.<br>HOMESITE INSURANCE CO.,<br>                  Defendant. | CIVIL ACTION NO. 19-2167 |

## MEMORANDUM OPINION

**Rufe, J.**                                                                                                 **April 30, 2020**

Plaintiff Jerelle Holden sued Defendant Homesite Insurance in state court after it denied her insurance claim for losses stemming from a burglary at her home. Homesite removed the case to federal court. Homesite has moved for judgment on the pleadings as to Holden's claim for breach of contract and for summary judgment as to Holden's claim for bad faith. Holden has moved for leave to amend the Complaint to add several additional defendants. For the reasons explained below, the motion to amend will be denied, the motion for judgment on the pleadings will be granted, and the motion for summary judgment will be dismissed as premature.

**I.    BACKGROUND**[1]

In 2017, Holden lived in a rented home in Drexel Hill, Pennsylvania with her partner, Evan Bailey, and their two children.[2] It is undisputed that she held an insurance policy covering that home issued by Homesite.[3]

---

[1] For purposes of both the motion for judgment on the pleadings and the motion for summary judgment, the Court views the facts in the light most favorable to the non-movant, Holden. The factual background of the case is confusing and convoluted and unfortunately the parties' briefs do not help to clarify matters.

[2] Holden Dep. [Doc. No. 13-3, Ex. D] at 8–9.

[3] *See* Policy [Doc. No. 13-3, Ex. C].

On June 30, 2017, Holden, Bailey, and the children left the house around 8 a.m.[4] When Holden and Bailey returned home that evening, they discovered that the house was "[c]ompletely upside down."[5] Every room had been "rummaged through," furniture was "flipped over" and couch cushions "unzipped," clothing was pulled out of the closets and "thrown all over the place"—"[e]verything [was] in disarray."[6] In the basement, they found that the lock on one of the windows had been broken and the window was pushed wide open.[7] As they walked through the house assessing the damage, Holden called police.[8] Two officers arrived about 15 minutes later.[9] They stayed about 20 minutes.[10]

Bailey's son arrived later that night to help Holden and Bailey clean up.[11] As they cleaned up the house, they began to determine what had been taken. The computer and the children's game system were still in the house,[12] but jewelry, perfume, and designer handbags were missing.[13] Among the stolen pieces of jewelry were two watches Holden purchased for herself.[14] Holden had receipts for most of these items.[15] Also missing were a Cartier watch and a diamond pendant for which Holden did not have receipts.[16] Holden testified that the Cartier

---

[4] Holden Dep. [Doc. No. 13-3, Ex. D] at 18–20.

[5] *Id.* at 19.

[6] *Id.* at 32–36.

[7] *Id.* at 37–38.

[8] *Id.* at 35–36.

[9] *Id.* at 39–40.

[10] *Id.* at 41.

[11] *Id.* at 41–42.

[12] *Id.* at 44–46.

[13] *Id.* at 46–47.

[14] *Id.* at 49.

[15] CoventBridge Report [Doc. No. 16, Ex. 5] at 5.

[16] Holden Dep. [Doc. No. 13-3, Ex. D] at 48; CoventBridge Report [Doc. No. 16, Ex. 5] at 5.

2

watch was a gift to Holden from Bailey.[17] She also testified that the diamond pendant was purchased by Bailey to pass down to their son as a family heirloom, and that both Bailey and Holden wore it occasionally.[18] Both the Cartier watch and the pendant had been appraised by a jewelry store called Market Street Gold several months before the break-in, and after the appraisal Holden attempted to have both items added to her policy with Homesite.[19]

Holden submitted a claim to Homesite the following day.[20] Shortly after the claim was opened, Homesite hired CoventBridge, an investigative agency in Florida, to investigate Holden's claim.[21] CoventBridge's investigator, Frank Simone, took statements from Holden and Bailey.[22] Simone reported to Homesite that Holden was able to produce receipts for all the items she claimed stolen except the Cartier watch and the diamond pendant.[23] According to Simone, Holden said that she had bought both pieces of jewelry herself and that she was the one who had them appraised.[24] When Simone visited Market Street Gold, however, he was told that Bailey had purchased both items and that he was the one who had them appraised.[25] Simone later spoke to the owner of Market Street Gold, who confirmed that "the gold chain and pendant were made for [Bailey]" and that "the Cartier watch was purchased by [Bailey] around the same time."[26]

---

[17] Holden Dep. [Doc. No. 13-3, Ex. D] at 49.

[18] *Id.* at 49–50.

[19] *Id.* at 57–60.

[20] *Id.* at 74–75. The total value of the items claimed lost, according to the verbal list Holden provided to Homesite, was $76,205.56. CoventBridge Report [Doc. No. 16, Ex. 5] at 5–6.

[21] Homesite Claim Notes [Doc. No. 16, Ex. 1] at 4.

[22] *Id.* at 9.

[23] *Id.*

[24] *Id.*

[25] *Id.* at 11.

[26] *Id.* at 12.

According to Simone's notes, Market Street Gold also claimed that when Bailey requested the appraisals, he asked that they be made in Holden's name for insurance purposes.[27]

When Bailey spoke to Simone, he disclosed that he had recently been incarcerated and had been on parole since March 2017.[28] Simone also spoke to Detective Silberstein with the Upper Darby Police Department, who provided a copy of the incident report and told Simone the circumstances of the break-in were "very suspicious."[29] Detective Silberstein suggested that "the home was totally ransacked and flipped 'like they were looking for drugs and cash.'"[30]

By this point, Homesite's notes on the claim show, it had concluded that Holden and Bailey had "provided false information concerning the purchase and appraisals of the jewelry."[31] Homesite believed that Holden and Bailey "knowingly misrepresented this information both when the items were scheduled and during the investigation of the claim."[32] Homesite's notes acknowledged, however, that but for the purported misrepresentation, any items belonging to Bailey that were stolen "may have been covered" under the policy anyway, as the policy covered "the property of others at the residence."[33]

Homesite also questioned whether Bailey lived with Holden. According to Homesite's records, Bailey's father told Simone that Bailey primarily lived with him but would spend a

---

[27] *Id.* at 13.

[28] *Id.* at 17; CoventBridge Report [Doc. No. 16, Ex. 5] at 14–15.

[29] CoventBridge Report [Doc. No. 16, Ex. 5] at 15.

[30] *Id.*

[31] Homesite Claim Notes [Doc. No. 16, Ex. 1] at 13.

[32] *Id.*

[33] *Id.*

couple of nights at Holden's house every week.[34] It is unclear how Bailey's primary residence might affect coverage of items belonging to him under the policy.

By August 4, 2017, Homesite had determined that it would deny the claim and the adjuster was preparing a denial letter "based on the misrep[resentation] concerning the appraisal and ownership of the jewelry."[35] The denial was made final in September.[36] On October 26, Homesite's claim notes show, it received a letter from attorney Michael Pileggi, who is representing Holden in this matter, requesting copies of the statements that Holden, the Market Street Gold jeweler, and others had provided during the investigation.[37] According to Plaintiff's counsel, multiple requests were made for those statements—in which Holden, according to Homesite, represented that she had purchased and obtained appraisals of the Cartier watch and diamond pendant—but they were never provided.[38] Homesite reopened the claim in response to the letter.[39] Homesite notified Plaintiff and her counsel that the claim had been closed again in February of 2018.[40]

## II. MOTION FOR LEAVE TO AMEND

### A. Legal Standard

Federal Rule of Civil Procedure 15(a) allows a party to amend its pleading after the time to amend as a matter of course has elapsed if the party obtains the opposing party's consent or

---

[34] *Id.* at 14.

[35] *Id.* at 15, 22.

[36] *Id.* at 23–24.

[37] *Id.* at 24.

[38] Pl.'s Mem. Opp. Mot. [Doc. No. 16] at n.4.

[39] Homesite Claim Notes [Doc. No. 16, Ex. 1] at 24.

[40] February 15, 2018 Letter [Doc. No. 16, Ex. 9].

leave of court.[41] The Rule directs that courts "should freely give leave when justice so requires."[42] "Leave to amend must generally be granted unless equitable considerations render it otherwise unjust."[43] Grounds that may warrant denial of leave to amend include undue delay, bad faith, dilatory motive, prejudice, and futility.[44]

"'Futility' means that the complaint, as amended, would fail to state a claim upon which relief could be granted."[45] In assessing whether an amendment would be futile, courts apply the same standard as that applied to Rule 12(b)(6) motion to dismiss.[46] That is, taking the facts alleged in the proposed Amended Complaint as true and drawing all reasonable inferences in the plaintiff's favor, courts ask whether the allegations are sufficient "to raise a right to relief above the speculative level."[47]

### B. Discussion

Plaintiff seeks leave to amend the Complaint to add three new defendants to the existing claims for breach of contract and bad faith[48]: Homesite claims adjuster Damien Thomas; CoventBridge, the investigative agency retained by Homesite to investigate Plaintiff's claim; and

---

[41] Fed. R. Civ. P. 15(a)(2).

[42] *Id.*; *see Long v. Wilson*, 393 F.3d 390, 400 (3d Cir. 2004) ("[M]otions to amend pleadings should be liberally granted.").

[43] *Arthur v. Maerski, Inc.*, 434 F.3d 196, 404 (3d Cir. 2006).

[44] *Foman v. Davis*, 371 U.S. 178, 182 (1962); *see Arthur*, 434 F.3d at 204.

[45] *Telford Borough Auth. v. EPA*, 2020 WL 605666, at *4 (E.D. Pa. Feb. 6, 2020).

[46] *Id.* (citing *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000)).

[47] *Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

[48] Plaintiff's brief in support of the motion for leave to amend indicates that Plaintiff would like to add all three proposed defendants to both the breach-of-contract and bad-faith claims. Pl.'s Mem. Supp. Mot. [Doc. No. 18] at 5. The proposed amended complaint Plaintiff submitted, however, adds those defendants only to the bad-faith claim. *Id.* at Ex. 1.

CoventBridge investigator Frank Simone. Defendant Homesite argues that the proposed amendments would be futile and prejudicial.

The Court agrees that these amendments would be futile because the claims they assert are "wholly insubstantial and frivolous."[49] The proposed Amended Complaint does not state a claim against any of the three additional defendants. Damien Thomas, a Homesite claims adjuster, is not a party to the insurance contract between Plaintiff and Homesite, and thus cannot be sued for breach of contract.[50] Nor can he be sued for bad faith, as the Pennsylvania bad faith statute applies only to "insurer[s]," a term courts have consistently interpreted as excluding insurance company employees.[51] Accordingly, the Complaint may not be amended to add Thomas as a defendant.

The same reasoning applies to the other proposed Defendants; neither Frank Simone nor CoventBridge was a party to the insurance contract, so joining either of them to the breach-of-contract claim would be futile, and under Pennsylvania law, neither an investigative agency nor its individual investigator qualifies as an "insurer" for purposes of § 8371.[52] Because amending the Complaint to include any of the three proposed defendants would be futile, the motion for leave to amend will be denied.

---

[49] *Batoff v. State Farm Ins. Co.*, 977 F.2d 848, 852 (3d Cir. 1992).

[50] *Reto v. Liberty Mut. Ins.*, No. 18-2483, 2018 WL 3752988, at *2 (E.D. Pa. Aug. 8, 2018) (Savage, J.) (explaining that claims representative "is not a party to the insurance contract who can be held liable for breach" and that "an agent is not liable for the principal's breach of contract").

[51] 42 Pa. Stat. Ann. § 8371.

[52] *Reto*, 2018 WL 3752988, at *2. Count II, the bad-faith count of the proposed Amended Complaint, like that of the original Complaint, also asserts that the current and proposed defendants violated the Unfair Insurance Practices Act, 40 P.S. § 1171.5, and the Unfair Claims Settlement Practices Act, 31 P.S. § 146. Plaintiff apparently cites these regulations as evidence of all defendants' bad-faith conduct. *See Bernstein v. Geico Cas. Co.*, No. 19-1899, 2020 WL 1308226, at n.3 (E.D. Pa. Mar. 19, 2020). Neither regulation provides a private right of action, however, so neither regulation offers Plaintiff a workaround to the "insurer" language of the bad-faith statute. *See Swan Caterers, Inc. v. Nationwide Mut. Fire Ins. Co.*, No. 12-024, 2012 WL 5508371, at *8 (E.D. Pa. Nov. 13, 2012) ("Courts within the Third Circuit and the Commonwealth of Pennsylvania continue to recognize that the UIPA and UCSPR do not provide plaintiffs with a private cause of action.").

### III. MOTION FOR JUDGMENT ON THE PLEADINGS

#### A. Legal Standard

Defendant Homesite has moved for judgment on the pleadings as to Count I, Plaintiff's breach-of-contract claim, on statute-of-limitations grounds. Federal Rule of Civil Procedure 12(c) permits a party to move for judgment on the pleadings where "no material issue of fact remains to be resolved" and the party is "entitled to judgment as a matter of law."[53] In evaluating a motion for judgment on the pleadings, courts "view the facts presented in the pleadings and the inferences to be drawn therefrom in the light most favorable to the nonmoving party."[54] "[A] defendant may properly raise a statute of limitations defense through a motion for judgment on the pleadings."[55]

Because Plaintiff's motion for leave to amend the Complaint will be denied, the operative pleading for purposes of the motion for judgment on the pleadings is the original Complaint filed in state court, which is properly attached to the Notice of Removal.[56]

#### B. Discussion

Plaintiff's insurance policy provides that no action may be brought against Homesite "unless the policy provisions have been complied with and the action is started within one year after the date of loss."[57] One-year statutes of limitations in insurance policies have been upheld

---

[53] *Jablonski v. Pan Am. World Airways, Inc.*, 863 F.2d 289, 290–91 (3d Cir. 1988) (quoting *Soc'y Hill Civic Ass'n v. Harris*, 632 F.2d 1045, 1054 (3d Cir. 1980)).

[54] *Id.* (quoting *Soc'y Hill Civic Ass'n*, 632 F.2d at 1054).

[55] *Watson v. City of Philadelphia*, No. 06-0883, 2006 WL 2460888, at *1 (E.D. Pa. Aug. 22, 2006) (citing *Sikirica v. Nationwide Ins. Co.*, 416 F.3d 214, 224–26 (3d Cir. 2005)).

[56] Doc. No. 1.

[57] Policy [Doc. No. 13-3, Ex. C] at 8.

as reasonable by Pennsylvania courts as well as federal courts applying Pennsylvania law.[58] It is undisputed that the date of loss in this case was June 30, 2017. Plaintiff filed this case in state court on April 11, 2019. Because Plaintiff did not file within the one-year limitations period ending June 30, 2018, Homesite argues that it is entitled to judgment on the pleadings on the breach-of-contract claim.

Plaintiff responds that although the one-year statute of limitations is valid as a general matter, in this case Homesite's "lack of good[-]faith conduct during the investigation toll[ed] the limitation period."[59] Plaintiff explains that after she received Homesite's letter denying her claim, she retained an attorney who contacted Homesite to request certain documentation. Although those documents were never furnished, Homesite's records show that it reopened the claim in response to receiving Plaintiff's counsel's letter. For the next several months, Homesite sent Plaintiff monthly notices that her claim remained open. Finally, in early February 2018, Plaintiff received a notice from Homesite that the claim had been closed.[60] Plaintiff argues that she "delayed filing her Complaint" in reliance on Homesite's "representations" that "Homesite had reopened the claim and continued to investigate the matter."[61]

---

[58] *Prime Medica Assocs. v. Valley Forge Ins. Co.*, 970 A.2d 1149, 1156 (Pa. Super. Ct. 2009); *Caln Vill .Assocs., L.P. v. Home Indem. Co.*, 75 F. Supp. 2d 404, 409–10 (E.D. Pa. 1999).

[59] Pl.'s Mem. Opp. Mot. [Doc. No. 16] at 15; *see Diamon v. Penn Mutual Fire Insurance Co.*, 372 A.2d 1218 (Pa. Super. Ct. 1977). Plaintiff cites *Diamon* for the proposition that an insurer who breaches a duty of good faith in the course of investigating the insured's claim waives any applicable statute-of-limitations clause. In *Diamon*, the insurer caused the insured to be wrongfully arrested and prosecuted for filing a false proof of loss. It took several years for the insured to overturn his conviction. When he finally brought suit, the insurer asserted that the claim was time-barred. *Id.* at 1219–20. The court held that the insurer's actions constituted an "inducement to withhold bringing suit" that suspended the limitations clause. *Id.* at 1222–23. Although Plaintiff criticizes Homesite's "attempt[s] to undermine Plaintiff's claim and initiate criminal charges" in the course of its investigation, *see* Pl.'s Mem. Opp. Mot. [Doc. No. 16] at 15, Plaintiff has not argued that Homesite's accusation of fraud suspended the statute of limitations altogether as in *Diamon*.

[60] The exact date of the letter is unclear. *See* Pl.'s Mem. Opp. Mot. [Doc. No. 16] at 16 & n.6.

[61] Pl.'s Mem. Opp. Mot. [Doc. No. 16] at 16–17.

Even assuming Plaintiff reasonably relied on a representation that Homesite was continuing to investigate her claim, her account does not demonstrate that Homesite caused Plaintiff's failure to comply with the limitations clause. In Plaintiff's own timeline, she received final confirmation that her claim had been denied and closed no later than February 2018. Plaintiff still did not file suit until more than one year later, on April 11, 2019. Thus, even accepting Plaintiff's timeline, Homesite is entitled to judgment on the pleadings on the breach-of-contract claim.

### IV. MOTION FOR SUMMARY JUDGMENT

Homesite argues that it is entitled to judgment as a matter of law on Plaintiff's bad-faith claim because Plaintiff's deposition testimony shows that she cannot meet her burden of establishing bad faith. Summary judgment is not appropriate at this time, however. This matter was removed to this Court and immediately placed in the arbitration track with no formal requests for discovery by any party. The litigation that has ensued does not preclude full and fair discovery on fact-driven claims that remain on the bad-faith count. The Court finds that summary judgment on this claim is premature and will dismiss the motion without prejudice. The parties will be directed to report jointly to the Court regarding what discovery, if any, is requested to proceed to arbitration, as currently scheduled.

### V. CONCLUSION

Holden's breach-of-contract claim is time-barred and leave to amend the Complaint will be denied. An order will be entered.